Mr. Justice MILLER
 

 delivered the opinion of the court.
 

 ' As the. case was decided on demurrer, or what is equivalent to a demurrer, the statements 'of the petition must be taken to be true. They show a faithful and laborious performance of their contract by the plaintiffs, for which no compensation was ever received.
 

 It is insisted by plaintiffs,'that because the government of the' United States was aware of the contract between them and the Indians, and failed to reserve and pay over to them the fivé per cent, which by that contract they had a right to claim of the Indians, the United .States is liable to them for the amount. It is supposed that the doctrine of ah equitable assignment of a debt or fund due from one person to another, by the order of the creditor to pay it to a third party, when brought to the notice of the debtor, is a sufficient foundation for thfe claim. But, if we concede that the government is to be treated in the prese't ease precisely as a private individual, it is not easy to se ’ how that doctrine ' cqn be made to apply. -The debt or fu *1 as to which such an equitable .assignment can be made, rust be some recognized or definite fund or debt, in the hands of a person who admits the obligation to pay the assignor; or, at least, it must be some liquidated demand, capable of being enforced in a court of justice.
 
 We
 
 apprehend that the doctrine has never been held,'that a claim of no fixed amount, nor time, or mode of payment; a claim which has never received the assent of the person against whom it is asserted, and which remains to be settled by negotiation or suit at law, can be so assigned as to give the assignor an equitable right to prevent the original parties
 
 *117
 
 from compromising or adjusting the claim on anyterms that may suit them. That is just what,is claimed in this case. For it is very clear that if this equitable claim in the hands of plaintiffs was not effectual before the treaty, it can have no effect afterwards.
 

 The treaty, by its terms, is incompatible with the claim of plaintiffs. None of the mon.ey could be paid to the plaintiffs if all of it was to he paid to the Indians individually, in proportions to be determined by their numbers.
 

 This principle of paying to the Indians
 
 per capita
 
 was not adopted with any reference to the plaintiffs’ claim as a means of exclusion; The treaty was made with the entire tribe of' Cherokees, of which these Western Oherokees were but a. small part; and the claims which they were urging on our government constitute a still smaller part of the matters set-fled by the treaty.
 

 Land claims were adjusted, the difficulties between this branch and the main body of the tribe were arranged. Other payments were made to the main tribe, in which the rule of paying
 
 per capita-
 
 was adopted. Now, the argument.assumes that uuless in adjusting all these important interests the United States kept in view the 'sum"to be paid to plaintiffs, by their contract with, the .Indians, and provided for it, they must either toake no treaty at all, or must pay their Claim. It cannot be permitted that by contracting with other parties, without requiring or asking the consent of the government, any one can establish such a right to control the action of that government in making treaties or contracts.
 

 The claim of the Western Indians was nothing moi’e than a claim prior to the treaty. Its justice had never been admitted. Its amount was- uncertain. These, together with the mode of payment; were all unsettled, and open to negotiation. Is it possible, that by making a contract with claimants to prosecute this demand against the government, the plaintiffs thereby acquired such a hold on that government, as not only made the claim good to that extent, but prevented it from compromising or settling with the claimants on the best terms to be obtained?
 

 
 *118
 
 "We have no hesitation in saying that the United States, under the circumstances, had the right to make the treaty that was made, without consulting plaiutiffs, or incurring any liability to them. The act of Congress which appropriated the money,, only'followed the treaty in securing its payment to the individual Indians, without deduction for agents. And both the act and the treaty are inconsistent with the ■ payment of any part of the sum thus appropriated to plaintiffs.
 

 The judgment of the Court of Claims, rejecting the demand, is therefore Affirmed.