**FLANIGAN et al. v. SECURITY–FIRST NAT. BANK OF LOS ANGELES et al.**

No. 1723.

District Court, S. D. California, Central Division.

Oct. 8, 1941.

78

Morris Lavine, of Los Angeles, Cal., for the plaintiffs.

Louis W. Myers (of O'Melveny & Myers), of Los Angeles, Cal., for defendants.

J. F. T. O'CONNOR, District Judge.

The defendants moved the court to dismiss the complaint on the grounds: (1) That the complaint failed to state a cause of action. (2) Without leave to amend, for the reason that the complaint could not be amended in view of the facts stated, and (3) That the court lacks jurisdiction because no controversy is pending.

This action is a contest over property left by the decedent, Georgia Anna Hebert. Some dates set forth in the complaint are important and will assist in clarifying the problem if set forth in· order. They are as follows:

December 16, 1889. Georgia Anna Anson married Henry H. Hebert in Phillips County, Kansas.

February 2, 1907. Georgia Anna and Henry H. Hebert were domiciled in the City of Spokane, State of Washington, and in the Superior Court of that state adopted Howard Hugh Hebert. The legality of the adoption is not questioned.

September 25, 1919. Georgia Anna Hebert executed her last will and testament, and bequeathed to her adopted son five dollars.

September 29, 1919. Georgia Anna Hebert and Henry H. Hebert were divorced, and a few years thereafter, date not specified, Georgia Anna Hebert established her residence in Los Angeles, County of Los Angeles and State of California, where she resided until her death.

July 15, 1922. Georgia Anna Hebert executed a second last will and testament, and bequeathed to her adopted son one dollar.

June 25, 1923. Howard Hugh Hebert, the adopted son, married Anna A. Janoske, which marriage was dissolved by the death of Howard Hugh Hebert on June 21, 1933.

Two daughters were the issue of this marriage: Elizabeth Ann Hebert, born January 5, 1925, and Yvonne Marie Hebert, born March 31, 1926.

July 16, 1936. Georgia Anna Hebert deleted all of the bequests in her last will and testament dated July 15, 1922, save and except the provisions which bequeathed the sum of one dollar to her adopted son, Howard Hugh Hebert. No provision was made in the will for the daughters of the adopted son.

October 10, 1938. Georgia Anna Hebert died, and at the time of her death was a resident of and domiciled in the City of Los Angeles, County of Los Angeles, State of California.

October 24, 1938. Anna A. Hebert, widow of adopted son, established her residence in the County of Los Angeles and State of California, together with her two minor daughters.

October 26, 1938. The defendant, Security-First National Bank of Los Angeles was appointed guardian of the estates of Elizabeth Ann Hebert and Yvonne Marie Hebert.

December 12, 1938. The last will and testament of Georgia Anna Hebert, deceased, was admitted to probate in the Superior Court of the City and County of Los Angeles, State of California, which court has exclusive jurisdiction in probate matters, and the Security-First National Bank of Los Angeles, one of the defendants, was by order of the court, appointed administrator.

May 15, 1939. An appraisal of the property in the estate of Georgia Anna Hebert, deceased, was filed in the Probate Court and the property was appraised at $358,392.25.

The complaint alleges that the plaintiffs, Sofie Konstanse Loland Olsen, Anna B. K. Loland Rasmussen, Karoline Hansen, Hans Kristiansen Lofthus and Berthe Hansen are residents of the Country of Norway, and that Laura Loland Flanigan and Hans Bernhard Olsen are residents of the State of Illinois, and are first cousins of the deceased Georgia Anna and as such first cousins they claim to be the rightful heirs at law, and entitled to inherit the estate of the deceased; that the minor daughters of the adopted son are not entitled to any part of the said estate except the sum of one dollar; that the decedent left surviving neither parent,

spouse, brothers, sisters nor issue other than the surviving minor daughters of Howard Hugh Hebert. Paragraph XXII is as follows:

"That the said estate of said Georgia Anna Hebert is now in process of administration in the said Superior Court in which Superior Court said children of said adopted son of the deceased have appeared and claimed to be the sole heirs-at-law of said deceased, and that as such alleged heirs-at-law they, said children of said Howard Hugh Hebert, claim that they are entitled to have distributed to them all of the entire estate of said deceased, and have petitioned said Superior Court to make final distribution to them, said defendants, of said entire estate."

And paragraph XXIII: "That said claim of said defendants herein so made in said Superior Court as aforesaid is based upon a mistake of law, and that should said Superior Court make or render any order, judgment or decree confirming or recognizing said claim of defendants herein, or declaring that the same is legal and valid, or distributing any part of said estate to said defendants, except the sum of One Dollar, such order, judgment of decree will be based upon a mistake of law, and will cloud plaintiffs' title to said estate, or will take the said estate from plaintiffs without due process of law and in violation of the Fourteenth Amendment to the Federal Constitution, and that such order, judgment or decree will be null and void".

And paragraph "XIV" on page 10: "Plaintiffs and each of them assert that they are about to be deprived of their property without due process of law guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States unless this Court decrees that they are entitled to inherit the estate of said deceased and that Yvonne Marie Hebert and Elizabeth Ann Hebert take nothing and restrains said Superior Court from distributing the said estate of said deceased otherwise than to plaintiffs herein".

The plaintiffs ask this court to construe and determine the rights of the parties under the will and contend that they are about to be deprived of their property without due process of law guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States, and contend that this court cannot take judicial notice of actions in the State courts in determining the motion to dismiss a suit for declaratory judgment, and cannot take judicial notice of the decisions of the higher Courts of the State of California in an action between the same parties, and is not res judicata as to matters not determined.

The motion of the defendants attacks the sufficiency of the complaint and is made under Rule 12, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, Rule 7(c) having abolished demurrers, pleas and exceptions for insufficiency of a pleading. The proper motion to attack a complaint is by motion to dismiss. A motion to dismiss admits all the allegations of fact which are material and relevant, alleged in the complaint, but does not admit arguments, inferences or legal conclusions. Such a motion performs the function formerly performed by a demurrer. Kendall v. United States, 7 Wall. 113, 74 U.S. 113, 19 L.Ed. 85; Hammond v. Mason & Hamlin Organ Co., 92 U.S. 724, 23 L.Ed. 767; Dred Scott v. Sandford, 19 How. 393, 60 U.S. 393, 15 L.Ed. 691; Blythe v. Hinckley, 180 U.S. 333, 21 S.Ct. 390, 45 L.Ed. 557; St. Louis, Kennett & Southeastern Railroad Co. v. United States et al., 267 U.S. 346, 45 S.Ct. 245, 69 L.Ed. 649; Nortz v. United States, 294 U.S. 317, 55 S.Ct. 428, 79 L.Ed. 907, 95 A.L.R. 1346.

Under these authorities the allegation in the complaint that the plaintiffs are "the rightful heirs at law of said deceased and entitled to inherit the estate of said deceased" is not admitted by the motion to dismiss.

The plaintiffs ask this court to construe the will executed, declared and published by the deceased; to declare the plaintiffs as cousins of the deceased lawfully entitled to the estate, and to declare the lawful issue of the adopted son of deceased not entitled to said estate save and except for the sum of one dollar bequeathed to their father.

The question presented to this court for decision is stated by the plaintiffs in the following language: "Did Georgia Anna Hebert by her Will disinherit the adopted son by leaving him one dollar, and no more? And in a prior will by leaving the disinherited, adopted son five dollars, and no more? And can the children of a

disinherited, adopted son take more than was left to him, and does such taking constitute the taking of property that should rightfully go to the blood relatives without due process of law, in violation of the constitution of the United States?"

This problem was before the Court of Appeals of the State of California in Re Estate of Hebert, 42 Cal.App.2d 664, 109 P.2d 729. A petition for rehearing was denied and petition for hearing in the Supreme Court of California was also denied. The court, in the Hebert opinion, said:

"The decedent Georgia Anna Hebert, who died intestate as to most of her estate, during her lifetime legally adopted Howard Hugh Hebert as her son. At the time of the adoption the interested parties were residents of the state of Washington and the order of adoption was made by a court of that state having the proper jurisdiction. The adopted son predeceased the decedent, leaving as his sole heirs two daughters, his legitimate issue by blood. The appellants, who are cousins of the decedent and would be entitled to inherit as next of kin if it be declared that the daughters of the adopted son are not entitled to inherit, have appealed from orders determining heirship and decreeing partial distribution which were made by the probate court in favor of the daughters of the adopted son. The question for determination is whether the daughters of the adopted son are heirs at law of the party who adopted their father."

The Hebert opinion discusses the holding in various California decisions construing the status of lawful issue of adopted children and their legal rights under California statutes and decisions. In the case of In re Estate of Winchester, 140 Cal. 468, 74 P. 10, the decedent had adopted a daughter and left legacies to the children of the daughter. In applying the provisions of the State Inheritance Act, it became necessary to determine whether the children were heirs of the decedent. The California court said: " * * * the children of such adopted child take by inheritance as issue of the adopting father".

This holding has been approved in several California cases. The opinion concludes by holding that the daughters of Howard Hugh Hebert, adopted son of Georgia Anna Hebert, were in fact heirs and lineal descendants of the deceased, Georgia Anna Hebert.

The plaintiffs, however, contend that this court cannot take judicial notice of the opinion in the Hebert case, supra. The great weight of authority is to the contrary. Our own Circuit Court met this question squarely in Hutchins v. Pacific Mutual Life Insurance Co. of California, 9 Cir., 97 F.2d 58, 59:

"We take judicial notice of the fact that the Supreme Court of California, in Carpenter, Commissioner, v. Pacific Mutual Life Insurance Company et al. [10 Cal.2d 307], 74 P.2d 761, has affirmed the order of the Superior Court of December 4, 1936, referred to above."

In Judith Basin Land Co. v. Fergus County, Montana, et al., 9 Cir., 50 F.2d 792, 794: "Courts of the United States take judicial notice of the laws of any state, whether depending on state statutes or judicial decisions. Lamar v. Micou, 114 U.S. 218, 5 S.Ct. 857, 29 L.Ed. 94. See, also, Atlantic Fruit Co. v. Red Cross Line [2 Cir.] 5 F.2d 218. Federal courts for many years have expressed concurrence in the general current of opinion upon state statutes in the state court".

In Barker v. Eastman, C.C., 192 F. 659, 660, the plaintiffs ask to have their rights established under the Barker Will. The court said:

"We take judicial notice of the fact that certain clauses of the will in question were considered and construed by the highest court of the state of New Hampshire something like 20 years ago. See Edgerly v. Barker, 66 N.H. 434, 31 A. 900, 28 L.R.A. 328. It appears upon the arguments that the settlement of the estate under the will has been pending in the probate court during the entire period from that time until the present, and that the estate is still in custodia legis with important questions of distribution now pending before the Supreme Court of the state. Without discussing the abstract right of the plaintiffs to bring this proceeding, and looking at the situation from an equitable standpoint, it is difficult to see why the plaintiffs should seek relief in this court, unless they seek for a different construction of the provisions of the will from that established by the highest court of the state in the early stages of the litigation. Indeed, such was the position of the plaintiffs upon oral argument.

" * * * If, upon some subsequent record, the validity of the Barker will should

be here put in issue upon proper pleadings and a full record, it is quite probable that the questions would be governed by the rule of construction and the rule of property right, so far as they are pertinent, established by the state Supreme Court in 1891, rules of construction and rules of right which have stood for nearly a quarter of a century, governing not only the property involved in that decision, but as principles governing similar questions and similar property rights within the state, rather than by an independent view or by the law of some other jurisdiction in respect to wills".

In Hennessy v. Tacoma Smelting & Refining Co., 9 Cir., 129 F. 40, 44, 64 C.C.A. 54: "The effect of a reversal of a judgment completely destroys its efficacy as an estoppel, and [the federal] appellate court may take judicial notice on the appeal of such a reversal [by a state supreme court] occurring after the date of the decision appealed from".

In Holly v. McDowell Coal & Coke Co., 4 Cir., 203 F. 668, 122 C.C.A. 64: "Court will take judicial notice of the statutes and decisions of the Supreme Court of the state construing them".

In re Durrant, C.C., 84 F. 314: "The circuit court will, in a collateral proceeding, take judicial notice of the affirmance of its judgment by the supreme court of the United States, when the fact that such judgment of affirmance has been rendered is one of general notoriety where such circuit court is held, and has been telegraphed to, and published in, the leading newspapers of the state".

Plaintiffs further contend: "This court cannot take judicial notice of actions in the state courts in determining a motion to dismiss a suit for declaratory judgment, but such action if alleged to be determinative, must be pleaded and proved by way of answer".

In Hutchins v. Pacific Mutual Life Insurance Co., supra, the plaintiff filed a stockholder's bill in equity. On motion of the defendants the trial court ordered a dismissal and on this motion for dismissal the Circuit Court took judicial notice of a decision of the Supreme Court of California as stated herein.

In State of Ohio ex rel. Seney v. Swift & Co., 6 Cir., 270 F. 141, 142, certiorari denied 1921, 257 U.S. 633, 42 S.Ct. 47, 66 L.Ed. 407, and appeal dismissed 1922, 260 U.S. 146, 43 S.Ct. 22, 67 L.Ed. 176: "Whenever a decision of the state court becomes relevant in any aspect of a suit in a United States court, the latter must take judicial notice of the state decisions, just as if they were fully pleaded in the record."

In Cray, McFawn & Co. v. Hegarty, Conroy & Co., D.C., 27 F.Supp. 93, affirmed, 2 Cir., 109 F.2d 443: "The law of any state, whether statutory or result of judicial decisions, is matter of which federal courts may take judicial notice without plea or proof, since laws of the several states may not in federal courts properly be regarded as 'foreign laws.'"

The court has examined the decisions relied upon by the plaintiffs with reference to judicial notice. There is a clear cut distinction for the reason that the plaintiffs' bill for declaratory relief sets forth the fact that the state court had taken jurisdiction of the subject matter and urges that the state court made an error in its determination of the rights of the parties.

The contention on the part of plaintiffs that they are about to be deprived of their property without due process of law guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States, is without force in view of the fact that an application could have been made to the Supreme Court of the United States by the plaintiffs for a writ of certiorari, from the decision of the California highest court, and if such rights were invaded they could have been protected.

The facts alleged by the plaintiffs clearly show that the Probate Court in the County of Los Angeles had jurisdiction of the subject matter of this litigation and of all the parties. The jurisdiction of the Superior Court over probate matters is conferred by the Constitution and it is not a statutory tribunal when sitting in probate. Heydenfeldt v. Superior Court, 117 Cal. 348, 49 P. 210.

The Probate Court in California has exclusive jurisdiction to compel an executor to account, and to distribute the assets (Auguisola v. Arnaz, 51 Cal. 435); to construe a will (Toland v. Earl, 129 Cal. 148, 61 P. 914, 79 Am.St.Rep. 100); to determine who is entitled to distribution (Simons v. Bedell, 122 Cal. 341, 55 P. 3,

68 Am.St.Rep. 35); to determine whether an attorney for absent ·or minor heirs shall be appointed, and to fix the amount of his compensation. Dougherty v. Bartlett, 100 Cal. 496, 35 P. 431. The Superior Court, when sitting as a court of probate, has exclusive jurisdiction of the distribution of an estate, and is not bound by an adjudication by the same court, when sitting as a court of equity, as to the interest of an heir, or devisee, where such interest was merely incidentally involved. In re Estate of Freud, 134 Cal. 333, 66 P. 476.

"Probate of estates of deceased persons is regarded as being in the nature of a proceeding in rem, wholly statutory and exclusively within the province of the tribunal set up by the state for dealing with matters of probate. The federal courts, therefore, are without jurisdiction to interfere with the decrees of the probate court". Ellis v. Stevens, D.C., 37 F. Supp. 488, 491.

The opinion cites the following cases: Case of Broderick's Will, 21 Wall. 503, 22 L.Ed. 599; O'Callaghan v. O'Brien, 199 U.S. 89, 25 S.Ct. 727, 50 L.Ed. 101; Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80; Sutton v. English, 246 U.S. 199, 38 S.Ct. 254, 62 L.Ed. 664; Wells v. Helms, 10 Cir., 105 F.2d 402; Carstensen v. United States Fidelity & Guaranty Co., 9 Cir., 27 F.2d 11.

In Miller v. Weston, 8 Cir., 199 F. 104, 119 C.C.A. 358, it was held that where the Constitution of the state vested in the county courts exclusive jurisdiction of probate proceedings and the right to decide therein all questions as to the genuineness and validity of wills, a federal court in that state is without jurisdiction of a suit to determine the validity of a will or to prevent its probate. In Ball v. Tompkins, C.C., 41 F. 486, the court said:

"By virtue of their chancery jurisdiction, the federal circuit courts have jurisdiction over the administration of estates when the requisite citizenship and other conditions exist. This jurisdiction does not extend to the appointment of administrators, confirmation of executors, or the probate of wills; nor will it be exercised when the state courts of concurrent jurisdiction have taken possession of the subject-matter of the controversy".

In Everhart v. Everhart, C.C., 34 F. 82, the court said: "Jurisdiction as to wills, and their probate as such, is neither included [in] nor excepted out of the grant of judicial powers to the courts of the United States. So far as it is ex parte, and merely administrative, it is not conferred, and it cannot be exercised by them at all, until in a case at law or in equity its exercise becomes necessary to settle a controversy of which a court of the United States may take cognizance by reason of the citizenship of the parties".

In Stansbury v. Koss, D.C., 10 F.Supp. 477: "Probate proceedings are 'in rem,' and are within exclusive jurisdiction of state court."

In Yonley v. Lavender, 88 U.S. 276, 21 Wall. 276, 22 L.Ed. 536, affirming 27 Ark. 252: "The several States of the Union have full control over the estates of deceased persons within their respective limits."

In Atwood v. Rhode Island Hospital Trust Co., 1 Cir., 34 F.2d 18, affirming D.C., 30 F.2d 707, and certiorari denied 280 U.S. 600, 50 S.Ct. 81, 74 L.Ed. 646: "State probate court alone has jurisdiction to determine what constitutes will under state laws, and determination is binding on all other courts."

■ It is clear that in actions where there is diversity of citizenship and the requisite jurisdictional amount involved and questions of heirship and construction of will have been determined by the Federal courts, it has been the settled and universal practice to follow the statutes and decisions of the state courts. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Gardner v. Collins, 27 U.S. 58, 2 Pet. 58, 84, 7 L.Ed. 347; Middleton v. McGrew, 64 U.S. 45, 23 How. 45, 47, 16 L.Ed. 403; Levy v. M'Cartee, 31 U.S. 102, 6 Pet. 102, 109, 8 L.Ed. 334; Byers v. McAuley, 149 U.S. 608, 621, 13 S.Ct. 906, 37 L.Ed. 867; Christianson v. King County, 239 U.S. 356, 373, 36 S.Ct. 114, 60 L.Ed. 327.

■ In view of this court's decision, no actual controversy exists between the plaintiffs and the defendants.

For the reasons given the motion of the defendants to dismiss the action of the plaintiffs is granted.